

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

# FELONY

**INDICTMENT FOR CONSPIRACY TO COMMIT**
**MAIL AND WIRE FRAUD AND NOTICE OF FORFEITURE**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO.** 20-00117 |
| v. | * | **SECTION:** SECT. G MAG. 3 |
| **DANNY PATRICK KEATING, JR.** | * | **VIOLATION:** 18 U.S.C. § 371 |
| | * | |

\*   \*   \*

The Grand Jury charges that:

## COUNT 1
(Conspiracy to Commit Mail and Wire Fraud)

**A.   AT ALL TIMES MATERIAL HEREIN:**

1.    Defendant **DANNY PATRICK KEATING JR.** resided in New Orleans, Louisiana.

2.    **KEATING** was a personal injury attorney licensed to practice in Louisiana.

3.    **KEATING** operated a law firm under various names at different times in the New Orleans metropolitan area.

4.      A "slammer" was an individual who drove a vehicle and intentionally collided with 18-wheeler tractor-trailers in order to stage accidents.

5.      A "spotter" was an individual who would follow a slammer in a separate vehicle and would pick up the slammer after the staged accident in order to flee the scene and evade detection.

6.      Damien Labeaud ("Labeaud") served as both a slammer and a spotter.

7.      Mario Solomon ("Solomon") served as a spotter for Labeaud.

8.      Roderick Hickman ("Hickman") served as a slammer and a spotter along with Labeaud.

9.      **KEATING** maintained bank accounts with IberiaBank ("Iberia"), a domestic financial holding company with approximately 190 bank branch offices located throughout the southern United States. Iberia operated a branch location at 2401 Canal Street in New Orleans, Louisiana, in the Eastern District of Louisiana. Cashed or deposited Iberia checks resulted in electronic wire communications from Louisiana to the Federal Reserve in Atlanta, Georgia.

10.     **KEATING** represented Larry Williams ("Larry Williams"), Lucinda Thomas ("Thomas"), Mary Wade ("Wade"), Judy Williams, a/k/a Judy Lagarde ("Judy Williams"), Dashontae Young ("Young"), Marvel Francois ("Francois"), Bernell Gale ("Gale"), Troy Smith ("Smith"), as well as Clients A, B, C, D, E, F, and G.

11.      Attorneys A, B, and C were personal injury attorneys licensed to practice law in Louisiana.

12.     Attorneys A, B, and C worked together in the same personal injury law firm located in New Orleans; their firm was not associated with **KEATING**.

13.     Attorney A represented Clients H, I, and J.

14.     Labeaud orchestrated staged accidents for **KEATING**, and Attorneys A, B, and C.

15.     The intersections of Chef Menteur Highway and Downman Road, Calliope Street and U.S. Highway 90, Louisa Street and Chickasaw Street, and Chef Menteur Highway and the Danziger Bridge were all located in the Eastern District of Louisiana.

### The March 27, 2017 Staged Accident (Mercury Mountaineer)

16.     On or about March 27, 2017, Clients A, B, H, and I were involved in a Labeaud/Hickman staged accident on Chef Menteur Highway near Downman Road involving a 2007 Mercury Mountaineer ("Mountaineer") with a 2017 Freightliner tractor-trailer operated by HMNG Trucking, LLC ("HMNG Trucking").

17.     HMNG Trucking was an interstate commercial trucking company headquartered in Georgia.

18.     Truck Driver A worked for HMNG Trucking and resided in Georgia.

19.     Security National Insurance Company ("Security") maintained offices throughout the United States.

20.     HMNG Trucking was insured by Security.

21.     On about November 2, 2017, **KEATING**, or an attorney at his direction, filed a Petition for Damages in the Civil District Court for the Parish of Orleans, State of Louisiana ("CDC"), on behalf of Clients A and B ("Client A/Client B Lawsuit").

22.     On or about February 5, 2018, **KEATING**, or an attorney at his direction, filed a Supplemental Petition for Damages in CDC, on behalf of Client A in the existing Client B litigation.

3

23.     The  Client A/Client B Lawsuit sought to recover damages from Security, HMNG Trucking, Progressive Security Insurance Company ("Progressive") in its capacity as Client A's uninsured/underinsured insurance carrier, and Truck Driver A.

24.     On or about February 9, 2018, Attorney A filed a Petition for Damages in CDC on behalf of Clients H and I ("Client H/Client I Lawsuit").

25.     The Client H/Client I Lawsuit sought to recover damages from Security, HMNG Trucking, and Progressive in its capacity as Client A's liability insurance carrier, and from Truck Driver A.

26.     On or about March 23, 2018, counsel for Progressive filed a Motion to Transfer and Consolidate the Client H/Client I Lawsuit and the Client A/Client B Lawsuit into one lawsuit in CDC.

27.     After the suit was filed, Client H switched from Attorney A and his/her law firm to **KEATING** for a period of time in the Client H/Client I Lawsuit.

28.     On or about July 20, 2017, Client H switched from **KEATING** back to Attorney A and his/her law firm for legal representation in the Client H/Client I Lawsuit.

### The May 17, 2017 Staged Accident (Ford F-150)

29.     On or about May 17, 2017, Clients C, D, and J were involved in a Labeaud/Hickman staged accident on Calliope Street at the merge onto U.S. Highway 90 Eastbound involving a 2004 Ford F-150 ("Ford F-150") with a 2006 Freightliner tractor-trailer operated by Stevie B's Trucking LLC ("Stevie B's Trucking").

30.     Stevie B's Trucking was an interstate commercial trucking company headquartered in Mandeville, Louisiana.

31.     Truck Driver B worked for Stevie B's Trucking and resided in Harvey, Louisiana.

32.     National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("NUFIC") maintained a principle place of business in New York.

33.     Stevie B's Trucking was insured by NUFIC.

34.     Financial Indemnity Company maintained an office in Dallas, Texas.

35.     Financial Indemnity Company insured the vehicle reportedly driven by Client C on or about May 17, 2017.

36.     Co-Conspirators A, B, and C recruited passengers for the May 17, 2017 staged accident.

37.     On or about March 28, 2018, Attorney A filed a Petition for Damages in First City Court of the City of New Orleans on behalf of Client J ("Client J Lawsuit").

38.     The Client J Lawsuit sought to recover damages from Stevie B's Trucking, NUFIC, and Truck Driver B.

39.     On or about May 17, 2018, **KEATING**, or an attorney at his direction, filed a Petition for Damages in CDC on behalf of Client D ("Client D Lawsuit").

40.     On or about May 17, 2018, an attorney known to the Grand Jury filed a Petition for Damages in CDC on behalf of Client C ("Client C Lawsuit").

41.     On or about May 31, 2018, counsel for Stevie B's Trucking, NUFIC, and Truck Driver B filed a Motion to Transfer and Consolidate the Client C Lawsuit and the Client D Lawsuit into one lawsuit in CDC ("Client C/Client D Lawsuit").

42.     The Client C/Client D Lawsuit sought to recover damages from Stevie B's Trucking, NUFIC, and Truck Driver B.

### The May 17, 2017 Staged Accident (Dodge Durango)

43.      On or about May 17, 2017, Client E, Gale, Francois, and Smith were involved in a Labeaud/Hickman staged accident on Chickasaw Street involving a 2007 Dodge Durango ("Durango") with a 2017 Peterbilt tractor-trailer operated by Tennessee Commercial Warehouse, Inc. ("TCW").

44.      TCW was an interstate commercial trucking company headquartered in Nashville, Tennessee.

45.      Truck Driver C worked for TCW and resided in Mississippi.

46.      Zurich American Insurance Company ("Zurich") maintained offices throughout the United States and Canada.

47.      TCW was insured by Zurich.

48.      Gallagher Bassett ("Gallagher") was the Third Party Administrator that handled claims for Zurich.

49.      Gallagher maintained an office in Clinton, Ohio.

50.      GoAuto Insurance Company ("GoAuto") maintained offices throughout Louisiana.

51.      GoAuto insured the vehicle reportedly driven by Francois on or about May 17, 2017.

52.      On or about May 17, 2018, **KEATING** filed a Petition for Damages in CDC on behalf of Smith, Gale, and Client E ("Smith Lawsuit").

53.      The Smith Lawsuit sought to recover damages from TCW, Zurich, GoAuto, Francois, and Truck Driver B.

### The June 6, 2017 Staged Accident (Chevrolet Avalanche)

54.     On or about June 6, 2017, Thomas, Wade, Judy Williams, and Young were involved in a Labeaud/Solomon staged accident on Chef Menteur Highway near Downman Road involving a 2009 Chevrolet Avalanche ("Avalanche") with a 2017 Freightliner tractor-trailer owned by Southern Refrigerated Transport, Inc. ("SRT").

55.     SRT was an interstate commercial trucking company headquartered in Texarkana, Arkansas.

56.     Covenant Transportation Group ("Covenant"), headquartered in Chattanooga, Tennessee, was the parent company that owned SRT.

57.     IQS insured Covenant and SRT.

58.     Chase Bank ("Chase") was the U.S. consumer banking business of JP Morgan Chase & Co., a global financial services firm with operations worldwide.

59.     Covenant maintained a bank account with Chase.

60.     On or about March 6, 2018, **KEATING** filed a Petition for Damages in CDC on behalf of Judy Williams and Wade ("Williams/Wade Lawsuit").

61.     On or about March 8, 2018, the Williams/Wade Lawsuit was removed to the U.S. District Court for the Eastern District of Louisiana.

### The June 12, 2017 Staged Accident (Chevrolet Trailblazer)

62.     On or about June 12, 2017, Larry Williams, Client F, and Client G were involved in a Labeaud/Solomon staged accident on Chef Menteur Highway and the Danziger Bridge involving a 2005 Chevrolet Trailblazer ("Trailblazer") with a 2015 Peterbilt tractor-trailer operated by Southeastern Motor Freight, Inc. ("SMF").

63.     SMF was a commercial trucking company headquartered in Jefferson, Louisiana.

64.     Hudson Specialty Insurance Company ("Hudson") maintained offices throughout the United States and Canada.

65.     Napa River Insurance Services ("NAPA") was a wholly owned subsidiary of Hudson.

66.     NAPA maintained an office in Indianapolis, Indiana.

67.     Hudson insured SMF, and NAPA provided claims management for SMF.

68.     On or about June 12, 2018, **KEATING**, or an attorney at his direction, filed a Petition for Damages in CDC on behalf of Larry Williams, Client F, and Client G ("Larry Williams Lawsuit").

B.     **THE CONSPIRACY**:

Beginning at a time unknown, and continuing until the date of this Indictment, in the Eastern District of Louisiana and elsewhere, **DANNY PATRICK KEATING, JR.**, Damian Labeaud, and others known and unknown to the Grand Jury, willfully and knowingly did combine, conspire, confederate, and agree:

      a.   to devise a scheme and artifice to defraud and to obtain money and property from insurance companies, commercial carriers, and trucking companies by means of materially false and fraudulent pretenses, representations, and promises, by use of interstate wire transmissions, for the purpose of executing or attempting to execute the Scheme and Artifice to Defraud set forth in Section C, in violation of Title 18, United States Code, Section 1343; and,

      b.   to devise a scheme and artifice to defraud and to obtain money and property from insurance companies, commercial carriers, and trucking companies by means of materially false and fraudulent pretenses, representations, and promises, and

willfully cause mail matter to be delivered by the United States Postal Service for the purpose of executing or attempting to execute the Scheme and Artifice to Defraud set forth in Section C, in violation of Title 18, United States Code, Section 1341.

## C.    **THE SCHEME AND ARTIFICE TO DEFRAUD**:

It was part of the scheme and artifice to defraud that, beginning in or about 2017, Co-Conspirator A introduced Labeaud to **KEATING** at a restaurant in New Orleans.

It was further part of the scheme and artifice to defraud that, beginning in or about 2017, Labeaud began working as a "runner" for **KEATING**, in that Labeaud referred persons involved in legitimate and staged motor vehicle accidents to **KEATING** in exchange for money. **KEATING** agreed to pay Labeaud $1,000.00 per passenger for accidents with tractor-trailers and $500.00 per passenger for accidents that did not involve tractor-trailers.

It was further part of the scheme and artifice to defraud that, in the beginning of **KEATING** and Labeaud's arrangement, **KEATING** was unaware that Labeaud was staging accidents. As **KEATING** and Labeaud's relationship developed, **KEATING** realized that Labeaud was intentionally staging automobile accidents and referring those potential plaintiffs to **KEATING**.

It was further part of the scheme and artifice to defraud that **KEATING** knowingly paid Labeaud for approximately thirty-one (31) illegally staged tractor-trailer accidents.

It was further part of the scheme and artifice to defraud that Labeaud and **KEATING** would sometimes discuss the staging of accidents before they happened.

It was further part of the scheme and artifice to defraud that Labeaud and **KEATING** would communicate via coded language regarding staging accidents.

It was further part of the scheme and artifice to defraud that **KEATING** discussed with Labeaud about changing the locations of the staged accidents, varying the number of passengers, avoiding talking to the police, and avoiding cameras.

It was further part of the scheme and artifice to defraud that **KEATING** advanced Labeaud thousands of dollars for accidents and would instruct Labeaud that he owed **KEATING** a certain number of accidents based on the amount of money advanced.

It was further part of the scheme and artifice to defraud that **KEATING** made loans and/or advances to clients with checks drawn on **KEATING's** Iberia account.

It was further part of the scheme and artifice to defraud that clients of **KEATING** provided false testimony in depositions taken in conjunction with fraudulent lawsuits filed by **KEATING**.

It was further part of the scheme and artifice to defraud that **KEATING** referred his clients in the staged accidents to certain known medical providers for medical treatment.

It was further part of the scheme and artifice to defraud that **KEATING** discussed with his clients in the staged accidents that they would likely receive more money in settlement if they received medical treatment.

It was further part of the scheme and artifice to defraud that **KEATING** would use the U.S Postal Service ("USPS") to mail settlement demands on behalf of his clients who were involved in staged accidents from the Eastern District of Louisiana to various out-of-state locations.

It was further part of the scheme and artifice to defraud that **KEATING** issued checks drawn on **KEATING's** Iberia account to compensate Labeaud for referring passengers involved in staged accidents.

It was further part of the scheme and artifice to defraud that **KEATING** would file lawsuits in state and federal court in Louisiana on behalf of his clients who were involved in the staged accidents.

It was further part of the scheme and artifice to defraud that, on or about February 13, 2019, Attorney B prepared a "Verification of Facts," wherein a plaintiff accused of fraud affirmed that the motor vehicle accident that he/she was involved in was not staged or fraudulent, and emailed the template to **KEATING** to use in order to help conceal the scheme and artifice to defraud.

It was further part of the scheme and artifice to defraud that **KEATING** represented approximately 77 plaintiffs involved in the 31 accidents staged by Labeaud.

It was further part of the scheme and artifice to defraud that **KEATING** settled approximately 17 of the 31 accidents.

It was further part of the scheme and artifice to defraud that, in some cases, **KEATING** withdrew from the lawsuits filed on behalf of his clients who were involved in the staged accidents.

It was further part of the scheme and artifice to defraud that **KEATING** and his 77 clients received approximately $1,500,000.00 in settlement resulting from his representation of his clients involved in the staged accidents.

It was further part of the scheme and artifice to defraud that **KEATING** kept approximately $358,000.00 in attorney's fees from the settled staged accident lawsuits.

**The March 27, 2017 Staged Accident (Mercury Mountaineer)**

It was further part of the scheme and artifice to defraud that, prior to March 27, 2017, Co-Conspirator B advised Clients A, B, H, and I that they could make money by participating in a staged automobile accident with a tractor-trailer.

It was further part of the scheme and artifice to defraud that, on or about March 27, 2017, Clients A, B, H, and I drove from Gibson, Louisiana in the Mountaineer owned by Client A to a fast food parking lot in New Orleans, Louisiana for the purpose of staging an automobile accident with a tractor-trailer in order to obtain money through fraud.

It was further part of the scheme and artifice to defraud that, in the fast food parking lot, Clients A, B, H, and I met with Labeaud and Hickman, who were in Labeaud's car.

It was further part of the scheme and artifice to defraud that Client A agreed to allow Hickman to drive the Mountaineer.

It was further part of the scheme and artifice to defraud that Hickman drove Clients A, B, H, and I in the Mountaineer to locate another vehicle to collide with in the area of Chef Menteur and Downman Road in the New Orleans East area.

It was further part of the scheme and artifice to defraud that, on or about March 27, 2017, at approximately 1:05 P.M., Hickman, while driving the Mountaineer on Chef Menteur Highway, intentionally collided with a 2017 Freightliner tractor-trailer owned by HMNG Trucking and operated by Truck Driver A while it was traveling past the Downman Road exit.

It was further part of the scheme and artifice to defraud that Hickman exited the Mountaineer after the collision and left the accident scene in Labeaud's car.

It was further part of the scheme and artifice to defraud that, after Hickman exited the Mountaineer, Client A got behind the wheel of the Mountaineer to make it appear that he/she was driving the vehicle at the time of the staged accident.

It was further part of the scheme and artifice to defraud that Client H contacted the New Orleans Police Department ("NOPD") to report that the occupants in Client A's car had been in

an automobile accident, and Client A falsely reported to the NOPD that he/she had been the driver of the Mountaineer and that the tractor-trailer had struck his/her vehicle.

It was further part of the scheme and artifice to defraud that Clients A and B were advised by Labeaud to meet **KEATING** at his office in order to arrange representation.

It was further part of the scheme and artifice to defraud that Clients H and I were advised by Co-Conspirator B and Labeaud to use Attorney A and B's law firm for their representation.

### The May 17, 2017 Staged Accidents (Ford F-150 and Dodge Durango)

It was further part of the scheme and artifice to defraud that, on or about May 17, 2017, Francois, Gale, Smith, and Clients C, D, E, and J drove from the areas of Gibson, Louisiana and Houma, Louisiana to a fast food parking lot in New Orleans, for the purpose of staging two automobile accidents with tractor-trailers in order to obtain money through fraud.

It was further part of the scheme and artifice to defraud that Francois, Gale, Smith, and Client E traveled to New Orleans in the Durango, and Clients C, D, and J traveled to New Orleans in the Ford F-150 belonging to Co-Conspirator C.

It was further part of the scheme and artifice to defraud that, in the fast food parking lot, Francois, Gale, Smith, and Clients C, D, E, and J met with Labeaud and Solomon, who were in Solomon's silver Chevrolet Silverado pick-up truck ("Silverado").

It was further part of the scheme and artifice to defraud that Clients C, D, and J agreed to allow Labeaud to drive the Ford F-150.

It was further part of the scheme and artifice to defraud that Labeaud drove Clients C, D, and J in the Ford F-150 to locate a vehicle to collide with in the area of Calliope Street and U.S. Highway 90.

It was further part of the scheme and artifice to defraud that, at approximately 1:28 P.M., Labeaud, while driving the Ford F-150 on Calliope Street, observed a 2006 Freightliner tractor-trailer operated by Stevie B's Trucking merging onto U.S. Highway 90 Eastbound, and that Labeaud intentionally collided with the Freightliner tractor-trailer.

It was further part of the scheme and artifice to defraud that Labeaud exited the Ford F-150 after the collision and got into the Silverado with Solomon while Client C got behind the wheel of the Ford F-150 to make it appear that Client C was driving the vehicle at the time of the staged accident.

It was further part of the scheme and artifice to defraud that Client C falsely reported to the NOPD that he/she had been the driver of the Ford F-150 and that the tractor-trailer had struck his/her vehicle.

It was further part of the scheme and artifice to defraud that Francois, Gale, Smith, and Client E agreed to allow Labeaud to drive Francois' Durango.

It was further part of the scheme and artifice to defraud that Labeaud drove Francois, Gale, Smith, and Client E in the Durango to locate another vehicle to collide with in the area of Louisa Street and Chickasaw Street.

It was further part of the scheme and artifice to defraud that, at approximately 2:00 P.M., Labeaud, while driving on Chickasaw Street, observed a 2017 Peterbilt tractor-trailer operated by TCW turning onto Louisa Street, and that Labeaud intentionally collided with the TCW tractor-trailer.

It was further part of the scheme and artifice to defraud that Labeaud exited the Durango after the collision, and Francois got behind the wheel of the Durango to make it appear that Francois was driving the vehicle at the time of the staged accident.

14

It was further part of the scheme and artifice to defraud that Francois falsely reported to the NOPD that she had been the driver of the Durango and that the tractor-trailer had struck her vehicle.

It was further part of the scheme and artifice to defraud that, after the accident on or about May 17, 2017, Smith, Francois, Gale, and Client E met **KEATING** at a coffee shop on Canal Street in order to discuss **KEATING's** representation of Francois, Gale, Smith, and Client E.

It was further part of the scheme and artifice to defraud that, on or about March 1, 2018, **KEATING**, or an attorney at his direction, mailed a settlement demand on behalf of Gale via the USPS from the Eastern District of Louisiana to Gallagher in Clinton, Iowa.

It was further part of the scheme and artifice to defraud that, on or about June 5, 2018, **KEATING**, or an attorney at his direction, mailed a copy of the Smith lawsuit via the USPS from the Eastern District of Louisiana to Truck Driver A in Jackson, Mississippi.

It was further part of the scheme and artifice to defraud that in June 2019, **KEATING** withdrew from the Smith Lawsuit because of Smith's connection to Lucinda Thomas, a client of **KEATING** and a passenger in a June 6, 2017 staged accident that had been flagged as fraudulent.

### The June 6, 2017 Staged Accident (Chevrolet Avalanche)

It was further part of the scheme and artifice to defraud that, on or about June 6, 2017, Thomas, Wade, Judy Williams, and Young drove Thomas' Avalanche from Houma, Louisiana, to a Burger King restaurant in New Orleans where they met with Labeaud and agreed to stage an automobile accident in order to obtain money through fraud.

It was further part of the scheme and artifice to defraud that Thomas, Wade, Judy Williams, and Young agreed to allow Labeaud to drive Thomas' Avalanche.

It was further part of the scheme and artifice to defraud that Labeaud drove Thomas, Wade, Judy Williams, and Young in the Avalanche to locate another vehicle to collide with in the area of Chef Menteur Highway and Downman Road.

It was further part of the scheme and artifice to defraud that, at approximately 12:30 P.M., Labeaud, while driving east on Chef Menteur Highway, observed a 2017 Freightliner tractor-trailer operated by SRT merging onto Chef Menteur Highway, and that Labeaud intentionally collided with the SRT tractor-trailer.

It was further part of the scheme and artifice to defraud that Labeaud exited Thomas' Avalanche after the collision and told Thomas to get behind the wheel of the Avalanche to make it appear that Thomas was driving the vehicle at the time of the staged accident.

It was further part of the scheme and artifice to defraud that Solomon picked up Labeaud after Labeaud fled from the Avalanche.

It was further part of the scheme and artifice to defraud that Thomas contacted the NOPD to report that she had been in an automobile accident.

It was further part of the scheme and artifice to defraud that Thomas falsely reported to the NOPD that she had been the driver of the Avalanche and that the tractor-trailer had struck her vehicle.

It was further part of the scheme and artifice to defraud that Labeaud and Solomon returned to the scene of the staged accident and made a false statement to the NOPD that they had witnessed the accident and that the driver of the SRT tractor-trailer had been at fault.

It was further part of the scheme and artifice to defraud that Labeaud contacted **KEATING** immediately after the staged accident on June 6, 2017, and arranged a meeting with Labeaud,

**KEATING**, Thomas, Wade, Judy Williams, and Young at the Raising Cane's restaurant ("Cane's") on Chef Menteur Highway.

It was further part of the scheme and artifice to defraud that **KEATING** met with Labeaud, Thomas, Wade, Judy Williams, and Young after they finished with the NOPD at the scene of the staged accident in order to discuss **KEATING's** representation of Thomas, Wade, Judy Williams, and Young.

It was further part of the scheme and artifice to defraud that **KEATING** paid Labeaud $7,500.00 on June 6, 2017, for the Thomas, Wade, Judy Williams, and Young staged accident as well as for another accident.

It was further part of the scheme and artifice to defraud that **KEATING** demanded approximately $1,000,000.00 per plaintiff in settlement for Thomas, Judy Williams, and Wade.

It was further part of the scheme and artifice to defraud that, months after the staged accident, **KEATING** contacted Labeaud because **KEATING** was worried about a telephone call made by Wade to Labeaud prior to the staged accident, and **KEATING** told Labeaud to contact Thomas and Wade to instruct them to "get their stories straight."  During a subsequent meeting, **KEATING** gave Labeaud an envelope containing phone records, pleadings, and depositions establishing that Thomas and Wade lied under oath in their September 13, 2018 depositions.

It was further part of the scheme and artifice to defraud that **KEATING** met with Thomas and Wade at a fast-food restaurant outside of New Orleans where **KEATING** told Thomas and Wade to "get their stories straight."

### The June 12, 2017 Staged Accident (Chevrolet Trailblazer)

It was part of the scheme and artifice to defraud that, before on or about June 12, 2017, Labeaud and Larry Williams decided to stage an automobile accident in order to obtain money through fraud.

It was part of the scheme and artifice to defraud that, before on or about June 12, 2017, Labeaud told Larry Williams that he had an attorney, **KEATING**, who would handle everything.

It was further part of the scheme and artifice to defraud that Clients F and G traveled from Houston, Texas, to New Orleans, to meet with Larry Williams.

It was further part of the scheme and artifice to defraud that Larry Williams borrowed the Trailblazer from a person known to the Grand Jury.

It was further part of the scheme and artifice to defraud that Larry Williams agreed to allow Labeaud to drive Larry Williams' Trailblazer.

It was further part of the scheme and artifice to defraud that Labeaud drove Larry Williams' Trailblazer to the Danziger Bridge and parked the Trailblazer in the eastbound far right-lane on Chef Menteur Highway.

Labeaud, Larry Williams, Client F, and Client G waited in the Trailblazer to locate a tractor-trailer to collide with in the area of Chef Menteur Highway and the Danziger Bridge.

It was further part of the scheme and artifice to defraud that Solomon waited in his Silverado on the Danziger Bridge immediately behind the Trailblazer operated by Labeaud.

It was further part of the scheme and artifice to defraud that, at approximately 11:30 A.M., Labeaud located and intentionally collided with a 2015 Peterbilt tractor-trailer owned by SMF driving east on Chef Menteur Highway.

It was further part of the scheme and artifice to defraud that Labeaud exited the Trailblazer after the collision and told Larry Williams to get behind the wheel of the Trailblazer to make it appear that Larry Williams was driving the vehicle at the time of the staged accident.

It was further part of the scheme and artifice to defraud that Larry Williams falsely reported to the NOPD that he had been the driver of the Trailblazer and that the tractor-trailer had struck his vehicle.

It was further part of the scheme and artifice to defraud that Solomon picked up Labeaud after Labeaud fled from the Trailblazer.

It was further part of the scheme and artifice to defraud that Labeaud contacted **KEATING** and arranged a meeting with Labeaud, **KEATING**, Larry Williams, and Clients F and G at **KEATING's** office.

It was further part of the scheme and artifice to defraud that, on or about September 14, 2018, **KEATING**, or an attorney at his direction, demanded approximately $60,000.00 in settlement for Client F and approximately $56,155.00 in settlement for Client G.

**D.    OVERT ACTS:**

### The March 27, 2017 Staged Accident (Mercury Mountaineer)

The below listed Overt Acts all occurred on or about March 27, 2017, unless noted otherwise.

1.    After the staged accident on March 27, 2017, **KEATING** met with Clients A and B to discuss **KEATING's** representation of Clients A and B.

2.    At some point after retaining Attorney A, Client H switched representation to **KEATING**.

3.      Client H received "loans" or "client advances on settlement" from **KEATING**, including, but not limited to, checks in the approximate amounts of $1,701.88 on or about May 17, 2017, and $750.00 on or about May 24, 2017.

4.      On or about July 20, 2017, **KEATING** texted Labeaud, "Your girl [Client H] just tired [sic] me and hired [Attorney A]."

5.      On or about November 2, 2017, **KEATING**, or an attorney at his direction, filed the Client A/Client B Lawsuit in CDC, and on February 5, 2018, added Client A as a plaintiff.

6.      On or about April 22, 2019, **KEATING** deposited a settlement check into his Iberia account in the amount of approximately $17,500.00 for Client A from Counsel for HMNG Trucking, Security, and Truck Driver A.

7.      On or about May 30, 2019, **KEATING** deposited a settlement check into his Iberia account in the amount of approximately $140,000.00 for Client B from counsel for HMNG Trucking, Security, and Truck Driver A.

### The May 17, 2017 Staged Accidents (Ford F-150 and Dodge Durango)

The below listed Overt Acts all occurred on or about May 17, 2017, unless noted otherwise.

8.      On or about May 16, 2017, Co-Conspirator C cashed a check from **KEATING**, dated May 16, 2017, referencing "client advance on settlement" in the amount of approximately $800.00.

9.      On or about May 16, 2017, at approximately 1:40 P.M., Co-Conspirator A texted Labeaud, "Can you do two tomorrow[?]"

10.     On or about May 16, 2017, at approximately 1:47 P.M., Labeaud texted Co-Conspirator A, "I need 25! It's my just me! N I'm kockin off 15[.]"

11.     On or about May 16, 2017, at approximately 1:51 P.M., Co-Conspirator A texted Labeaud, "Call me[.]"

12.     On or about May 16, 2017, at approximately 1:52 P.M., Co-Conspirator A texted Labeaud, "Lawyer got u plus[.]"

13.     On or about May 16, 2017, at approximately 1:53 P.M., Co-Conspirator A texted Labeaud, "I'm talking about two different."

14.     On or about May 16, 2017, at approximately 9:41 P.M., Labeaud texted Solomon, "say bro call me asap!" and specifying that "it's very important."

15.     At approximately 6:22 A.M., **KEATING** called Co-Conspirator A.

16.     Co-Conspirator A and Client H travelled from the Houma, Louisiana area to meet with **KEATING** in New Orleans.

17.     At approximately 9:33 A.M., 10:07 A.M., and 10:48 A.M, **KEATING** called Co-Conspirator A.

18.     At approximately 11:39 A.M., Co-Conspirator A texted Labeaud, "Working on the roads we rolling now[.]"

19.     At approximately 1:52 P.M., Client H cashed a check from **KEATING** dated May 17, 2017, referencing "client advance on settlement" in the amount of approximately $1,701.88 at a Whitney Bank in New Orleans.

20.     At approximately 2:03 P.M., Co-Conspirator A cashed a check from **KEATING** dated May 17, 2017, referencing "client advance on settlement," in the amount of approximately $4,500.00 at a Whitney Bank in New Orleans.

21.     On or about May 19, 2017, at 9:05 A.M., **KEATING** texted Labeaud, "I can't answer the phone right now. Please [call] back later." At 9:13 A.M., Labeaud responded, "Ok

homie I understand! I'm going fishing this morning & I was trying 2 c if u was gd 4 now r u would like some more of them big bull red's?" At 9:20 A.M., **KEATING** responded, "Good for now. Chat next week."

### The May 17, 2017 Staged Accident (Ford F-150)

22.     Client D received "loans" or "client advances on settlement" from **KEATING**, including, but not limited to, checks in the approximate amounts of $700.00 on or about May 17, 2017, and $750.00 on or about July 26, 2017.

23.     Client C received "loans" or "client advances on settlement" from **KEATING**, including, but not limited to, checks in the approximate amounts of $800.00 on or about May 16, 2017, and $980.00 on or about November 14, 2017.

24.     Client J received "loans" or "client advances on settlement" from **KEATING**, including, but not limited to, checks in the approximate amounts of $300.00 on or about May 17, 2017, and $300.00 on or about June 2, 2017.

25.     On or about May 17, 2018, **KEATING**, or an attorney at his direction, filed the Client D Lawsuit in CDC.

26.     On or about September 7, 2018, Client C provided false testimony in a subsequent deposition taken in conjunction with the consolidated lawsuits filed by **KEATING** and the attorney working at his direction.

### The May 17, 2017 Staged Accident (Dodge Durango)

27.     After the staged accident on May 17, 2017, **KEATING** met with Francois, Gale, Smith, and Client E at a coffee shop on Canal Street to discuss **KEATING's** representation of Francois, Gale, Smith, and Client E.

28.     During the meeting with **KEATING**, **KEATING** asked Francois, Gale, Smith, and Client E if they were injured in the accident.  **KEATING** then explained that their recovery would depend on the amount and type of medical treatment they received.

29.     Smith received "loans" or "client advances on settlement" from **KEATING**, including, but not limited to, checks in the approximate amounts of $750.00 on or about June 8, 2017; $750.00 on or about August 11, 2017; $1,200.00 on or about November 20, 2017; and $750.00 on or about December 22, 2017.

30.     Gale received "loans" or "client advances on settlement" from **KEATING**, including, but not limited to, checks in the approximate amounts of $500.00 on or about June 23, 2017, and $500.00 on or about November 30, 2017.

31.     On or about March 1, 2018, **KEATING**, or an attorney at his direction, mailed an envelope via USPS to "Gallagher Basset [sic]," P.O. Box 2934, Clinton, Iowa 52733, containing a fraudulent settlement demand of approximately $28,769.00 on behalf of client Gale.

32.     On or about May 17, 2018, **KEATING**, or an attorney at his direction, filed the Smith Lawsuit in CDC.

33.     On or about June 5, 2018, **KEATING**, or an attorney at his direction, mailed an envelope via USPS to Truck Driver C, *** Myer, Jackson, Mississippi 39209, containing a copy of the Smith Lawsuit.

34.     On or about July 12, 2018, an attorney at **KEATING's** direction signed an affidavit of service, notarized by **KEATING**, and filed it in conjunction with the Smith Lawsuit.

35.     On or about February 13, 2019, Attorney B prepared a Verification of Facts and emailed the template to **KEATING** in order to conceal the scheme and artifice to defraud.

36.     In June 2019, Smith met with **KEATING**, at which time **KEATING** instructed Smith to drop the Smith Lawsuit because of Smith's connection to Lucinda Thomas, who was a client of **KEATING** and a passenger in the June 6, 2017, staged accident.

37.     In or about June 2019, **KEATING** had Smith sign, without reading, the Verification of Facts that Attorney B emailed to **KEATING**.

### The June 6, 2017 Staged Accident (Chevrolet Avalanche)

The below listed Overt Acts all occurred on or about June 6, 2017, unless noted otherwise.

38.     Labeaud called **KEATING** at approximately 10:58 A.M., shortly before the staged accident occurred at approximately 12:30 P.M.

39.     At approximately 12:44 P.M., **KEATING** sent a text message to Labeaud.

40.     At approximately 1:36 P.M. and 1:43 P.M., Labeaud called **KEATING**.

41.     At approximately 1:58 P.M., **KEATING** called Labeaud.

42.     At approximately 3:06 P.M., Labeaud called **KEATING**.

43.     Labeaud contacted **KEATING** and arranged a meeting with him, Thomas, Wade, Judy Williams, and Young at the Cane's restaurant on Chef Menteur Highway.

44.     **KEATING** met with Labeaud, Thomas, Wade, Judy Williams, and Young after they finished with the NOPD at the scene of the staged accident in order to discuss **KEATING's** representation of Thomas, Wade, Judy Williams, and Young.

45.     **KEATING** paid Labeaud with a $7,500.00 check from **KEATING's** Iberia account for the Thomas, Wade, Judy Williams, and Young staged accident as well as for another accident.

46.     At approximately 3:32 P.M., Labeaud called **KEATING**.

47.     On or about June 7, 2017, Labeaud cashed the $7,500.00 Iberia check that he received from **KEATING** on June 6, 2017.

48.     After or about July 5, 2017, Thomas negotiated a $500.00 check that she received from Covenant.

49.     After or about November 27, 2017, **KEATING** deposited a $20,000.00 settlement check into his Iberia account for Young that **KEATING** received from Covenant.

50.     On or about March 6, 2018, **KEATING** filed the Williams/Wade Lawsuit in CDC.

51.     On or about June 5, 2018, **KEATING** filed the Thomas Lawsuit in CDC.

52.     On or about September 13, 2018, Thomas, Wade, and Judy Williams each provided false testimony in depositions taken in conjunction with the lawsuits filed by **KEATING**.

53.     Before on or about April 9, 2019, **KEATING** contacted Labeaud because of a telephone call made between Wade and Labeaud prior to the staged accident, and **KEATING** told Labeaud to contact Thomas and Wade to instruct them to "get their stories straight."  During a subsequent meeting, **KEATING** gave Labeaud an envelope containing phone records, pleadings, and depositions establishing that Thomas and Wade had lied under oath in their September 13, 2018 depositions.

54.     Before on or about April 9, 2019, **KEATING** met with Thomas and Wade at a fast-food restaurant outside of New Orleans where **KEATING** told Thomas and Wade to "get their stories straight."

55.     On or about April 9, 2019, Thomas, Wade, and Judy Williams each provided false testimony in subsequent depositions taken in conjunction with the lawsuits filed by **KEATING**.

56.     After or about June 7, 2019, Thomas negotiated a $7,500.00 settlement check she received from Covenant.

57.     After or about June 7, 2019, Wade negotiated a $7,500.00 settlement check she received from Covenant.

58.     After or about June 7, 2019, Judy Williams negotiated a $7,500.00 settlement check she received from Covenant.

### The June 12, 2017 Staged Accident (Chevrolet Trailblazer)

The below listed Overt Acts all occurred on or about June 12, 2017, unless noted otherwise.

59.     Before on or about the June 12, 2017 staged accident, Labeaud told Larry Williams that he had an attorney, **KEATING**, who would handle everything.

60.     Labeaud called **KEATING** at approximately 11:21 A.M., shortly before the staged accident that occurred at 11:30 A.M.

61.     At approximately 1:00 P.M., Labeaud called **KEATING**.

62.     At approximately 1:01 P.M., Labeaud called **KEATING's** law firm.

63.     After the staged accidents, Labeaud contacted **KEATING** and arranged a meeting with Labeaud, Larry Williams, Client F, and Client G at **KEATING's** office.

64.     On or about June 30, 2017, **KEATING** paid Labeaud with a $5,000.00 check from **KEATING's** Iberia account.

65.     On or about June 12, 2018, **KEATING**, or an attorney at his direction, filed the Larry Williams Lawsuit in CDC.

66.     On or about September 14, 2018, **KEATING**, or an attorney at his direction, demanded approximately $60,000.00 in settlement for Client F and approximately $56,155.00 in settlement for Client G.

67.     On or about December 20, 2018, Larry Williams and Client G each provided false testimony in depositions taken in conjunction with the lawsuits filed by **KEATING** and the attorney acting at his direction.

## Other Payments and Texts with Labeaud

68.     On or about May 24, 2017, at 9:37 A.M., Labeaud texted **KEATING**, "Gd morning! Do u want somemore fish 2dy 4 lunch bro !!" At 9:42 A.M., **KEATING** responded, "Yes, sir." At 10:01 A.M., Labeaud responded, "Ok I got u bro! . . . . Soon as I'm done here cn I c u about yesterday? N I will have u 4 more 2dy ok homie !!" At 10:04 A.M., **KEATING** responded, "Okay. I need to catch my breath after today." At 10:12 A.M., Labeaud responded to **KEATING**, "Lol . . . I told u I got u bro! So u want me 2 just call u when I'm done with this so we cn hook up?" At 10:14 A.M., **KEATING** responded, "Yep", followed by "You've been great, bro." Labeaud responded, "Thanks, bro! Wait until da end of da year homie!" At approximately 11:06 A.M., Labeaud texted **KEATING**, "I'm here" and **KEATING** responded, "3 min."

69.     On or about May 24, 2017, at 12:59 P.M., Labeaud texted **KEATING**, "Ok homie I got da other 4 for u!! What's up?" At 1:02 P.M., **KEATING** responded to Labeaud, "Bring em by?" Labeaud responded, "Ok c u n a min bro!" to which **KEATING** responded, "Cool."

70.     On or about May 25, 2017, at 1:57 P.M., **KEATING** texted Labeaud, "Money not the issue. Processing the catch is the problem. Talk to you Tuesday!!"

71.     On or about July 17, 2017, **KEATING** gave Labeaud $15,000.00 drawn on his Iberia account so that Labeaud could purchase a $15,000.00 Chase Bank cashier's check to buy Solomon's truck.

72.     On or about September 25, 2017, **KEATING** wrote a $17,000.00 check drawn on his Iberia account to himself for "advertising" and used the proceeds to purchase a $17,000.00 cashier's check payable to Labeaud.

All in violation of Title 18, United States Code, Section 371.

## NOTICE OF FORFEITURE

1.      The allegations of Count 1 in this Indictment are incorporated by reference as though set forth fully herein for the purpose of alleging forfeiture to the United States.

2.      As a result of the offense alleged in Count 1, the defendant, **DANNY PATRICK KEATING, JR.**, shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property real or personal which constitutes or is derived from proceeds traceable to said offense.

3.      If any of the above-described property, as a result of any act or omission of the defendant:

a.      cannot be located upon the exercise of due diligence;

b.      has been transferred or sold to, or deposited with, a third person;

c.      has been placed beyond the jurisdiction of the Court;

d.      has been substantially diminished in value; or

e.      has been commingled with other property which cannot be subdivided without difficulty;

the United States shall seek a money judgment and, pursuant to Title 21, United States Code, Section 853(p), forfeiture of any other property of the defendant up to the value of said property.

A TRUE BILL:

PETER G. STRASSER
UNITED STATES ATTORNEY

BRIAN M. KLEBBA
MARIA M. CARBONI
SHIRIN HAKIMZADEH
EDWARD J. RIVERA
Assistant United States Attorneys

New Orleans, Louisiana
November 5, 2020

29

FORM OBD-34

No._____

# UNITED STATES DISTRICT COURT

Eastern _____ District of _____ Louisiana

_____ Criminal _____ Division

## THE UNITED STATES OF AMERICA

vs.

DANNY PATRICK KEATING, JR.

# INDICTMENT

**INDICTMENT FOR CONSPIRACY TO COMMIT MAIL AND WIRE FRAUD AND NOTICE OF FORFEITURE**

**VIOLATION:**   18 U.S.C. § 371

A true bill

_____

Filed in open court this _____ day of _____ 2020. _____ A.D.

_____
Clerk

Bail, $ _____

_____
**BRIAN M. KLEBBA**
Assistant United States Attorney